## FOX v CONWAY et

Ohio Appeals, 2nd Dist, Franklin Co

No 2919.    Decided Nov 4, 1938

Knepper, White & Dempsey, Columbus, for plaintiff-appellee.

Eagleson & Laylin, Columbus, Martin & Corry, Springfield, for defendant-appellant.

## OPINION

By BARNES, PJ.

The above-entitled cause is now being determined on defendants' appeal on questions of law from the judgment of the Court of Common Pleas of Franklin County, Ohio.

On November 24, 1934, at about 9:30 at night, the plaintiff, Ora J. Fox, while operating his Ford coupe, came in contact with a moving traction car of the defendants, and by reason thereof plaintiff was severely injured. Plaintiff filed his action in the Common Pleas Court of Franklin County, Ohio, on April 6, 1935. Thereafter motion directed to the petition was filed, which being sustained, amended petitions were filed, which were again attacked by motion, resulting in plaintiff's third amended petition being filed on January 11, 1936.

The plaintiff charged the defendant with negligence in the following particulars:

"1. In operating said traction car at such time and place when approaching said crossing without sounding a horn, blowing a whistle or in any other manner warning plaintiff of the approach of said car.

"2. In operating said car at said time and place without having the lights on the front of said car lighted and burning.

"3. In operating said car at a high and excessive rate of speed of 80 miles per hour at said time and place."

The defendant filed answer in which many of the allegations of the petition were admitted, but denied each and every allegation of negligence. As a second defense it averred that whatever injuries plaintiff received were the result of his sole negligence.

The specific acts of negligence, as averred in the answer, are as follows:

1. Plaintiff, Ora J. Fox, totally disregarded and failed to heed the warning by whistle and otherwise, given by the operator of said interurban car when approaching said crossing, and attempted to drive his said automobile over and upon said crossing directly into the path of the approaching interurban car;

2. Plaintiff, Ora J. Fox, upon approach-

ing said crossing and well knowing the existence thereof, failed to stop, look and listen in effective manner before attempting to proceed over the said crossing;

3. Plaintiff, Ora J. Fox, failed and neglected to operate his said automobile at said crossing in such a manner as to enable him to keep the same under control;

4. Plaintiff, Ora J. Fox, operated his said automobile directly against and into the side of said electric interurban car.

A third defense, as an alternative pleading, raised the issue of contributory negligence and in support thereof specifically set out the same claimed acts of negligence as were presented in the second defense.

Plaintiff's reply denied the affirmative averments of the answer.

The following is a brief summary of the attending facts:

The defendants, as receivers for the interurban traction company at the time mentioned, through its servants and employees were operating an electrically propelled interurban car on a privately owned right-of-way in an easterly direction, with its destination Columbus, Ohio. That particular car earlier in the day left its terminus at Cincinnati and had proceeded through Dayton, Springfield and other smaller municipalities, to the scene of the accident. From Springfield to Columbus the private right-of-way of the railroad parallels highway route No. 40. In passing through the village of Alton, the track is in the center of the street, and as it leaves the corporate limits, the tracks angle back to the private right-of-way, which is adjacent to or in close proximity to the north line of said route No. 40.

During the day of the accident, Ora J. Fox had spent most of the day in Columbus, having come there from a northerly county, where he was then living. At or about eight o'clock he started for home. Some place within the city limits he turned on to Broad Street, which is also known as route No. 40. He proceeded westerly about a mile and a half west of the corporation limits, turned north on a private right-of-way across the railroad tracks to a night club known as Rooster Inn. This inn was located approximately 125 feet from the railroad tracks. The inn served sandwiches and light beer. The entertainment was music and dancing. Mr. Fox's purpose in stopping at the inn was to see a Mrs. Brush, who was a waitress therein. A short time previously Mrs. Brush had visited in Akron, and there had seen Mr. Fox's fourteen-year old daughter. This daughter was the subject of their conversation. Mr. Fox ate a couple of sandwiches and drank two or three glasses of beer. Near 9:30 he left the inn and started home. After he had got into his Ford coupe and turned around, he proceeded in a southerly direction, intending to reach highway No. 40 and then go west. As he approached the railroad track he stopped his car he says within 6 to 8 feet of the railroad track, first looked east, then looked west, and not seeing a car approaching, started to move forward at a speed of from 5 to 6 miles an hour, and just as the front wheels of his car were between the tracks, he saw this black monster (meaning the traction car) bearing down. He remembered nothing thereafter. He estimates the distance when he first saw the car as between 10 and 15 feet. His testimony was to the effect that it had no lights, nor did it blow any whistle or give any warning of any kind or character.

The defendant presented evidence that warning was given by sounding the klaxon, and that the traction car had all lights burning.

There is also a conflict in the testimony as to the point of contact, it being the claim of the defendant the plaintiff's Ford did not reach the tracks but was driven into the front left corner of the traction car, thereby being turned around to the rear, the Ford then hitting the side of the car farther back. The private driveway from route 40 over the tracks and into the grounds of the inn was reasonably level.

Plaintiff, neither through his petition nor his evidence, makes any claim of any obstruction along the right-of-way which might interfere with his view to the west. Defendants present evidence in support of their claim that there was no obstruction, and in addition present exhibits in the nature of photographs. One of the photographs according to the photographer, was taken with the camera located six feet north of the north rail of the traction company and pointed west. This photograph was marked Exhibit K. It shows a view of the track for a long distance. The only objects in close proximity would be the trolley poles. Back farther north are two apple trees, but they would not constitute any substantial obstruction to the track. The photograph shows a beer sign, said to be more than 100 feet from the private crossing. The uncontradicted evidence is that this sign was not there at the time of the accident.

Following the accident the traction car stopped, variously estimated at from 400 to

1000 feet east of the scene of the accident. The plaintiff following the accident was taken to a hospital.

We do not deem it necessary to go into the details of the nature or extent of plaintiff's injuries. Suffice it to say they were severe.

In addition to the general verdict in favor of plaintiff in the sum of $7500.00, the jury answered the following three interrogatories:

"1. Do you find from the evidence that the whistle on the interurban car was blown as the car approached the crossing in question?

"Answer. No. (Signed by nine jurors).

"2. Do you find from the evidence that in operating said car at said time and place there was on the front end of said car a light or lights turned on and lighted?

"Answer. Yes. Dim. (Signed by eleven jurors).

"3. If the plaintiff, Ora J. Fox, had looked westward from his automobile when he was 6 or 8 feet north of the interurban tracks and just before he started to approach the tracks with his automobile, could he have seen the approaching interurban car?

"Answer. Yes (Signed by eleven jurors)."

Following the return of the verdict and within time, defendant filed motion for judgment notwithstanding the verdict, on the ground that the answers to the special interrogatories were in irreconcilable conflict with the general verdict in favor of the plaintiff. Defendant also, within time, filed motion for new trial.

The trial court, on August 4, 1936, sustained defendant's motion, set aside the general verdict and entered judgment for defendant. Plaintiff gave notice of appeal on questions of law, and on July 6, 1937, our court reversed and remanded the cause to the Common Pleas Court for further proceedings according to law.

Defendant then gave notice of appeal to the Supreme Court. On February 8, 1938, the Supreme Court sustained the judgment of the Court of Appeals, Fox v Conway, 133 Oh St 273.

On the review in our court as well as in the Supreme Court, we did not have the advantage of the bill of exceptions. The prescribed procedure limits the inquiry to the pleadings, general verdict and answered special interrogatories. Board of County Commissioners v Deitch et, 94 Oh St 1; Richter v Lake Erie Ry. Co., 17 Abs 425.

Plaintiff's petition contained the allegation that he stopped his car for the purpose of looking and listening when 10 feet from the track of the railway company.

It is our conclusion, concurred in by the Supreme Court, that under the issues as presented through the petition it was too limited to say that one must look when 6 or 8 feet from the track. In the absence of a bill of exceptions, a reviewing court could have no information as to the claimed facts other than were set forth in the pleadings.

Following the decision of the Supreme Court, the case was remanded to the Common Pleas Court, and then came on for hearing on defendant's motion for new trial.

This motion was overruled and judgment entered for plaintiff in conformity to the general verdict. Thereupon the defendant gave notice of appeal on questions of law.

Counsel for defendant set forth five specifications of error. No specific objections are made to any of the procedural steps taken before and during the trial, including the charge of the court. In substance, it is the claim of the defendant under the record that judgment should be entered for the defendant, or in the alternative that the verdict and judgment are so manifestly against the weight of the evidence as to demand a new trial.

In addition to what we had before us at the prior hearing, we now have the bill of exceptions and this presents the question in a very different way. We now know, as we could not before, that plaintiff testified that as he approached defendant's track and when 6 to 8 feet from the north rail, he stopped his car, first looked east and then looked west and not seeing or hearing any car approaching, he proceeded at a speed of from 5 to 6 miles an hour, and when the wheels of his automobile were in the center of the track he was struck by this traction car which was moving without lights and without giving any warning by whistle, bell or otherwise, and according to some other witnesses was proceeding at a speed of 80 miles per hour.

This testimony of plaintiff, fixing the distance at 6 to 8 feet from the track where he stopped to look and listen, makes interrogatory No. 3 conform to the evidence, while it does not conform to the pleadings.

It should not be understood that plaintiff was bound to give exact distances, but certain latitude should always be given under the attending circumstances to a degree of inaccuracy in giving estimates of

distance. Through the evidence we now know, as we could not know in the former hearing that the variations of this 10 feet or an even greater distance would not have changed the opportunity of clear vision. In effect, the jury finds that had plaintiff looked westward from his automobile at the point where he says he stopped and just before he started, he could have seen the approaching interurban car. Unless this answer to the interrogatory is so manifestly against the weight of the evidence as to require its rejection, we must accept it as a finding of a material fact.

The jury's answer to interrogatory No. 2 is also important. The interrogatory in substance requests the jury to find from the evidence whether or not at said time and place there was on the front end of said car a light or lights turned on and lighted. The jury answered, "Yes. Dim." This controverts the claim of plaintiff that the car was moving without lights. The word "Dim" is a relative term and standing alone might raise the inquiry as to the degree of dimness.

The answer to interrogatory No. 3 lends an aid. Since the jury determined that he could have seen the car had he looked, it therefore follows that the light must have been of sufficient brilliance to have permitted him to see. The uncontroverted evidence is that there were eleven electric light bulbs on the front of the car, in addition to the big headlight. Then the plaintiff's witness, located more than 100 feet from the track testified that he saw the car approaching shortly before the crash and that he observed dim lights. The motorman on the car testified that all the lights, including the headlights, and thirty-two 36 watt lights on the inside of the car, were burning. Passengers on the car corroborated this evidence of the motorman.

We have no difficulty in arriving at the conclusion, under the state of the record, that the jury would be warranted in answering interrogatories Nos. 2 and 3 as they did.

Irrespective of the answer to the interrogatories, and even if none had been submitted, we still have the question as to whether or not the defendant was guilty of contributory negligence or negligence as a matter of law, if the record in its entirety would permit no other conclusion than that if plaintiff had looked he could have seen the approaching car before driving on the track.

The answer of the jury to the interrogatories presents this as an established fact unless so manifestly against the weight of the evidence that conscience would not permit it to stand. Under this situation the law in Ohio is uniform and well defined. It can serve no useful purpose to quote at length from reported cases, but we merely refer to them by title. It is the law of Ohio that a person about to cross a railroad track is under the obligation to look and listen and his looking and listening must be done effectively and just before going on the track or so near thereto as would protect himself.

New York, Chicago & Cincinnati R. R. Co. v Kistler, 66 Oh St 326;

The Detroit, Toledo & Ironton R. R. Co. v Rohs, 114 Oh St 493;

The Toledo Terminal R. R. Co. v Hughes, 150 Oh St 562;

The Pennsylvania R. R. Co. v Rusnyk, 117 Oh St 530;

The Baltimore & Ohio R. R. Co. v Heck, Admr., 117 Oh St 147;

The Pennsylvania R. R. Co. v Moses, 125 Oh St 621;

The Columbus, Delaware & Marion Electric Co. v O'Day, Admr., 123 Oh St 638;

The Toledo & Indiana R. R. Co. v Yahlker, 51 Oh Ap 378;

The Youngstown Suburban R. R. Co. v Prigison, 53 Oh Ap 189.

Under the state of the record in the light of the cited cases, we have no alternative but to find that plaintiff was Headnote 2. guilty of negligence directly and proximately contributing to the accident and resultant injuries.

Further considering the record and by virtue of §11601, GC, we find it our duty to enter a final judgment in favor of the defendant and against the plaintiff. This section of the statute was construed in the case of Levin, Appellee v Kiska, et, Appellants, 54 Oh Ap 408. An attempt was made to carry this case to the Supreme Court, where the appeal was dismissed, 132 Oh St 219. The above section and the Court of Appeals' decision are commented upon in 10 Ohio Opinions, at page 174.

Before closing we desire to say that we have carefully examined each and every case cited by counsel for plaintiff. We are unable to conclude that any of the cases cited are controlling under the state of the record in the instant case.

Special reference should be made to the argument of counsel for plaintiff wherein

he invokes the legal principle that where a person about to cross the railroad and while seeing the approaching car is by reason of its speed or other conditions, misled into believing he could cross ahead of it. This rule of law is well recognized.

However, it can not be given application in the instant case for the reason that plaintiff does not predicate his case on the question that he looked, saw the approaching car and the exercise of ordinary care was warranted in thinking he could cross ahead of it. Further, that on account of the excessive speed and dim lights, the car bore down upon him before he could cross.

This is not the kind of case that plaintiff presented to the jury and through the record to this court. Since through petition and his evidence the claim is made that he looked and did not see, the above legal principle is not applicable. The jury having said that had he looked he could have seen, it leaves no other inference than that he did not look at all or if he did look, he did not so do effectively.

In view of our finding it is unnecessary to comment on the issue as to whether or not the defendant was guilty of actionable negligence. While a close question there possibly is sufficient in the record to warrant the jury's finding so far as it relates to defendant's negligence.

The cause is reversed, final judgment entered and entry may be drawn in conformity to this opinion.

HORNBECK and GEIGER, JJ, concur.