IN RE PROTEST FILED WITH THE FRANKLIN COUNTY BOARD OF
ELECTIONS BY CITIZENS FOR THE MERIT SELECTION OF JUDGES, INC. ON
BEHALF OF ISSUE III, MERIT SELECTION OF JUDGES.

[Cite as In re Protest Filed by Citizens for the Merit Selection of Judges, Inc.
(1990), 49 Ohio St. 3d 102.]

(No. 88-1404 — Submitted September 26, 1989 — Decided February 28, 1990.)

S. *Michael Miller*, prosecuting attorney, *William B. Shimp* and *Harland H. Hale*, for appellant.

*Lane, Alton & Horst, Jack R. Alton* and *John A. Fiocca, Jr.*, for appellee.

MOYER, C.J. The sole issue presented in this case is whether a board of elections may disqualify a signature on an initiative petition circulated pursuant to R.C. Chapter 3519 where the residence indicated by a signer is not the same as the residence on record with the board of elections for said signer.

We first must determine whether the court of appeals correctly concluded that this election case is not moot. Appellee, Citizens, does not contest this conclusion.

As a general rule, election cases are moot where the relief sought is to have a name or an issue placed on the ballot and the election was held before the case could be decided. *State, ex rel. Gyurcik,* v. *Brown* (1964), 176 Ohio St. 288, 27 O.O. 2d 200, 199 N.E. 2d 596; *State, ex rel. Santora,* v. *Bd. of Elections of Cuyahoga Cty.* (1962), 174 Ohio St. 11, 21 O.O. 2d 35, 185 N.E. 2d 438. Nevertheless, even when an election has been conducted, a case is not moot where the issue or controversy is " 'capable of repetition yet evading review.' " *Storer* v. *Brown* (1974), 415 U.S. 724, 737, fn. 8, quoting *Rosario* v. *Rockefeller* (1973), 410 U.S. 752, 756, fn. 5; *Foster* v. *Cuyahoga Cty. Bd. of Elections* (1977), 53 Ohio App. 2d 213, 7 O.O. 3d 282, 373 N.E. 2d 1274. This is one such case. Here, the issue is a matter of constitutional and statutory interpretation which affects how Ohio's eighty-eight boards of elections will determine the sufficiency of a particular category of signatures on initiative petitions. We therefore agree with the court of appeals that this case presents a matter evading review but capable of repetition and was properly considered by the appellate court.

The narrow questions presented are what is an "elector," and must he or she place on an initiative petition the residence shown on the records of the board of elections, or may said signer enter his or her current address on the petition if it is different from the address on the board of elections' records?

Section 1, Article V of the Ohio Constitution provides:

"Every citizen of the United States, of the age of eighteen years, who has been a resident of the state, county, township, or ward, such time as may be provided by law, and has been registered to vote for thirty days, has the qualifications of an elector, and is entitled to vote at all elections. Any elector who fails to vote in at least one election during any period of four consecutive years shall cease to be an elector unless he again registers to vote."

R.C. 3501.01(N) defines "elector" or "qualified elector" as "a person having the qualifications provided by law to entitle him to vote." R.C. 3501.01(O) provides: " 'Voter' means an elector who votes at an election." Further, R.C. 3501.01(P) states that " '[v]oting residence' means that place

of residence of an elector which shall determine the precinct in which he may vote." R.C. 3503.07 provides: "Each person who will be of the age of eighteen years or more at the next ensuing November election, who is a citizen of the United States, and who, if he continues to reside in the precinct until the next election, * * * shall, unless otherwise disqualified, be entitled *to be registered as an elector* in such precinct. * * *'' (Emphasis added.)

Section 1g, Article II of the Ohio Constitution provides in relevant part: "* * * Each signer of any * * * petition must be an elector of the state and shall place on such petition after his name the date of signing and his place of residence. * * *''

We observe that Section 1g, Article II of the Ohio Constitution, by its own language,[1] is a self-executing provision. *Hockett* v. *State Liquor Licensing Bd.* (1915), 91 Ohio St. 176, 183, 110 N.E. 485, 487. A clause in a constitution is self-executing if it contains more than a mere framework, and specifically provides for carrying into immediate effect the enjoyment of the rights established therein without legislative action. See *Yenter* v. *Baker* (1952), 126 Colo. 232, 248 P. 2d 311. However, laws may be passed to facilitate its operation, as long as they do not restrict or limit the provision or the powers therein reserved. See *Daggett* v. *Hudson* (1885), 43 Ohio St. 548, 3 N.E. 538.

Under R.C. 3503.14, a person who qualifies to register to vote must complete a *registration form that* specifically asks "What is your residence?," and provides spaces ex-

pressly designated for the person's full street address, city, state and zip code. If an already registered elector changes residence, he or she must notify the board of elections at least thirty days (twenty-nine days in some cases) preceding the next special, primary or general election. R.C. 3503.11(A). R.C. 3503.11(E)(1) also permits a registered elector who changes residence within his precinct to present himself on the day of a special, primary or general election at the polling place and vote if he first completes a notice of change of residence. See, also, R.C. 3503.15 and 3503.16. In order to be entitled to vote, therefore, a person must qualify under Section 1, Article V of the Ohio Constitution and R.C. 3503.07, and then register in accordance with R.C. 3503.06 *et seq.*

All of these provisions produce the conclusion that even a previously registered elector who has changed residence may not vote at any location unless he or she has filed a change of residence notice with the board of elections. Stated another way, such person is not an "elector" or "qualified elector" unless his actual current residence is registered with the board of elections. The voting residence is that residence filed with the board of elections.

We consider next the specific requirement found in R.C. 3519.10 and the relevant cases cited by the parties.

R.C. 3519.10 provides in pertinent part: "Each signer of any initiative * * * petition must be a qualified elector of the state. He shall place on such petition after his name the date of signing and the location of his voting

---

[1] This constitutional section concludes with the following language:

"* * * The foregoing provisions of this section shall be self-executing, except as herein otherwise provided. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved."

residence, including the street and number in which such voting residence is located * * *."

Citizens argues that the language of R.C. 3519.10 is directly in conflict with Section 1g, Article II of the Ohio Constitution, and that the requirement of R.C. 3519.10 that signers of an initiative petition state their "voting residence" as registered with the board of elections conflicts with the general "residence" requirement contained in Section 1g.

In support of its ruling, the court of appeals relied on this court's three-to-three decision in *State, ex rel. Schroy*, v. *Wagner* (1933), 127 Ohio St. 174, 187 N.E. 572. It is the first of two brief opinions of this court on the issue and is in conflict with the later case, discussed *infra*. In *Wagner*, the court considered whether G.C. 4785-34[2] would permit previously registered electors to list an address other than their registered voting residence on a nominating petition. G.C. 4785-34 provided in part: "* * * No person residing in any registration precinct shall be entitled to vote at any election, or to sign any declaration of candidacy, nominating, initiative, referendum or recall petition, *unless he is duly registered as an elector* in the manner provided herein." (Emphasis added.) 114 Ohio Laws, Part I, 686.

Although the decision in *Wagner* was split by a vote of three to three, on this particular issue, a majority of four held that because the only requirement of the statute was that the elector be "duly registered as an elector," failure to transfer registration or notify the board of elections of a new residence did not negate the person's status as a registered elector. We think this analysis as applied to the statutes as they exist today is not well founded. Since a person may not vote on the day of an election if he or she has not submitted the necessary change of residence form to the board of elections, that person is not entitled to vote. Although a person may be registered with a board of elections, if that person has moved to a new residence, he or she cannot be "registered" as an elector unless that person has satisfied the change-of-residence requirements of R.C. Chapter 3503.

In the second case, this court reviewed a mandamus action on a similar issue. In *State, ex rel. Braverman*, v. *Vitullo* (1948), 150 Ohio St. 289, 38 O.O. 121, 82 N.E. 2d 92, the board of elections had invalidated one hundred forty-eight signatures submitted on a nominating petition for the reason that the addresses of the signers did not correspond with the voting residences appearing on the registration cards filed with the board. This statute, G.C. 4785-91, later R.C. 3513.27 but repealed in 1954, provided that independent candidates could be nominated by petition. 124 Ohio Laws 673, 684. The court held that the statutory requirement that persons signing such petitions must state their voting residence was mandatory and must be complied with in order for their signatures to be valid.[3]

---

[2] The relevant portion of this statute, with some revision, is now found at R.C. 3503.06: "No person shall be entitled to vote at any election, or to sign any declaration of candidacy or any nominating, initiative, referendum, or recall petition, unless he is registered as an elector."

[3] In stating that the "voting residence" of an elector "is that residence stated on the registration cards filed with the boards of elections," the *Braverman* court relied on G.C. 4785-41 (R.C. 3503.13: registration forms, records); 4785-42 (R.C. 3503.14: content of forms); 4785-48 (R.C. 3503.20:

The court in *Vitullo* did not consider the *Wagner* case in its analysis, but reviewed the issue based on the General Code requirement that the nominating petition forms contain the "voting residence" of electors signing such petition. The court held that the "*voting residence* is that residence stated on the registration cards filed with the boards of elections. * * *" (Emphasis *sic*.) *Id*. at 291, 38 O.O. at 121, 82 N.E. 2d at 93.

It is our opinion that the definitions of "elector" established by Section 1, Article V of the Ohio Constitution and the corresponding statutory provisions are necessarily and wholly applicable to the term "elector" as used in Section 1g, Article II of the Ohio Constitution and its facilitating statutory provisions.

There is nothing in either the Constitution or the statutes that implies that a potential "elector" is not required to give his current residence to the board of elections in order to qualify to vote. The R.C. 3519.10 requirement that a signer of an initiative petition place his or her voting residence on the petition is not in conflict with Section 1g, Article II of the Ohio Constitution. An elector must be "registered" in order to either vote or sign such petition *on the day* that he or she decides to exercise the right. In either case, that person must have filed a change of residence notice with the board of elections. We do not view this requirement as restricting or limiting the power to sign initiative petitions conferred by Section 1g, Article II, but as a fully contemplated and consistent requirement of the voting franchise provisions. The purpose of

repealed in 1977); and 4785.51 (R.C. 3503.23: official registration lists). *Id*. at 291, 38 O.O. at 121, 82 N.E. 2d at 93.

this requirement is not to restrict the power of the people to vote or to sign petitions, but to ensure the integrity of and confidence in the process. To this extent, *State, ex rel. Schroy*, v. *Wagner, supra*, must be overruled. We hold, therefore, that a board of elections may disqualify a signature on an initiative petition circulated pursuant to R.C. Chapter 3519 where the residence indicated by a signer is not the same as the residence on record with the board of elections for said signer.

For the reasons stated above, we reverse the judgment of the court of appeals.

*Judgment reversed.*

SWEENEY, DOUGLAS, H. BROWN and RESNICK, JJ., concur.

HOLMES and WRIGHT, JJ., dissent.

WRIGHT, J., dissenting. Ohio's Constitution is the ultimate expression of the will of the people of Ohio in carrying out their self-governance. Thus, it troubles me to see the majority hold that a legislative enactment, R.C. 3519.10, which requires an elector signing an initiative petition to give his or her "voting residence," controls registration for Ohio initiative petitions. The majority seemingly overlooks the clear mandate of Section 1(g), Article II of the Ohio Constitution that requires an elector signing an Ohio initiative petition to give only his or her "place of residence." Accordingly, I would affirm the court of appeals' ruling that these signatures are valid for the purposes of an initiative petition.

Section 1(g), Article II of the Ohio Constitution provides the nearly exclusive means of control over Ohio's initiative petition process. This section

contains express self-executing language near its end which bars any attempt at "limiting" or "restricting" the powers or provisions of that section.

As stated, Section 1(g), Article II of the Ohio Constitution requires that an elector signing an initiative petition give his or her "place of residence." Case law has interpreted such language to mean the place within the county where the elector currently resides. See, e.g., *Kyser* v. *Bd. of Elections of Cuyahoga Cty.* (1973), 36 Ohio St. 2d 17, 65 O.O. 2d 93, 303 N.E. 2d 77. R.C. 3519.10 requires the listing of a "voting residence." Yet Section 1(g), Article II should control in case of inconsistency where the Section 1(g), Article II "place of residence" language could not be harmonized with the R.C. 3519.10 "voting residence" language. This seeming conflict can be harmonized by noting that R.C. 3501.01 (the definitions section of Title 35, "Elections") defines "voting residence" as "* * * that *place of residence* of an elector which shall determine the precinct in which he may vote." (Emphasis added.)

I accept the premise that "place of residence" is the controlling language regarding the addresses of electors who sign initiative petitions. If "place of residence" is the controlling language, then those electors who listed addresses on the petition different from those addresses listed on the voter registration cards, but who *nonetheless* were still valid electors within their county, would *not* be precluded as "NRA" (not registered at this address).

Several other strong arguments support the position that "place of residence" is the controlling language in determining the validity of initiative petition signatures. First, "[t]he petition and signatures upon such petitions shall be *presumed* to be in all respects *sufficient* unless * * *" otherwise proven not later than forty days before the election. (Emphasis added.) Section 1(g), Article II, Ohio Constitution. *State, ex rel. Herbert,* v. *Mitchell* (1939), 136 Ohio St. 1, 8, 15 O.O. 330, 333, 22 N.E. 2d 907, 910. Second, treating the "place of residence" language as restrictively as the majority reads it today seriously constrains the ability of Ohio electors to utilize the initiative process to place an amendment on the Ohio ballot. Third, Section 1(g), Article II of the Ohio Constitution governs the qualifications of signers of *initiative,* supplementary, or referendum petitions. It does *not* deal with qualifications to *vote* in an election. The General Assembly has enacted more stringent requirements to qualify to vote. See R.C. 3503.01 *et seq.* Thus, by using the "place of residence" language, the legislature allowed electors to retain their more wide-ranging ability to initiate an amendment, yet also advanced the legislature's policy of guarding against vote fraud.

Since it is clear to me that the "place of residence" language found in Section 1(g), Article II of the Ohio Constitution controls elector registration for the Ohio initiative petition process, I must respectfully dissent.

HOLMES, J., concurs in the foregoing dissenting opinion.